Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning and welcome to the Fourth Circuit. Judge Wynn, Judge Harris, and I are happy to hear your cases today. Our first case is DIRECTV, Coley v. DIRECTV, and Mr. O'Keefe. Is that correct? Yes, Your Honor. Thank you, sir. You may proceed. May it please the Court, my name is Jay O'Keefe, and I represent Kimberly Coley. Seated with me at Council table is Robert Shaw, who represents Randy Coley, and with the Court's indulgence, we'd like to split our argument today. I'll address the issues in the brief filed by Thundertime and Mrs. Coley, as well as any questions the Court might have about DIRECTV's motion to dismiss Ms. Coley's appeal. Mr. Shaw, in turn, will address the issues in Mr. Coley's brief, as well as the motion to certify four questions of law to the Delaware Supreme Court and the motion for a limited remand, and we'd like to reserve three minutes for rebuttal. With respect to Ms. Coley and Thundertime, the District Court committed two fundamental errors. First, it proceeded against Thundertime and Mrs. Coley without service of process and without personal jurisdiction over them, and it awarded relief against them in their absence. And then second, two and a half years after dismissing the claims against Ms. Coley with prejudice, and without bringing her back into the proceeding, the District Court ordered that she was equitably estopped from asserting a membership interest in Thundertime, even though she hadn't made a misstatement of material fact that DIRECTV could have reasonably relied on to support that estoppel. That last one, you really nuanced that one, didn't you? We did, Your Honor, but the Court doesn't even have to reach that if it agrees with us on the primary service point about personal jurisdiction. You probably don't want us to reach that one. Oh, we don't have any problem talking about that, Your Honor. I mean, the basic point there is that it's crucial when doing that analysis to look at the statements that the District Court relied on, and when you do, they fall into three buckets. The first bucket are statements that Ms. Coley never made at all. Those are things her husband said. They're off the table because she can't be equitably estopped by someone else's statement. Second, you have things she said that were actually true on any reasonable interpretation, like she doesn't own any businesses associated with her husband's business because the proof was that her husband's business was the cable TV business, and it's Thundertime is a passive real estate holding company. This is a really interesting case. It's been a long time since I actually practiced law. I haven't seen one that has been moved along in this fashion in a while, so go ahead and start the argument. I'm sorry, though. While you're on that point, can you help me understand, and maybe it's just a sense in which your two arguments are related, but I don't see how Mrs. Coley was equitably estopped from doing anything. She's not even in the case. That's exactly right, Your Honor. That was my point, that you don't even have to get there if you agree with us that she's not in the case, the claims against her. Whether or not she's improperly not in the case, she's not in the case. So in what sense is she equitably estopped by this ruling? I just don't get that. It seems to me that Mr. Coley was equitably estopped from raising this issue as sort of a defense to reverse veil piercing, but how is she equitably estopped? Well, she is personally named in the district court's order, and it directs that she is equitably estopped from asserting an ownership interest in that company. So we think that that order is void for exactly that reason, that she's not before the court. She never represented to the district court that she had any ownership interest. In fact, it was the contrary, wasn't it? That's correct, Your Honor, and she collaterally attacked the proceeding through a North Carolina case that was dismissed shortly before the district court entered its order. Why didn't she intervene? Your Honor, the record's not clear about that. First of all, it's unclear from the record when she actually got notice. We know that by March 4, 2016, she had notice because that's when she instituted the North Carolina proceeding, but that was four months after the district court had its hearing on this issue and made its intent pretty well clear about how it's going to rule. Is she married to Mr. Coley at the time? She is married to Mr. Coley, Your Honor. Okay. And there's also evidence that DirecTV's put a record, I think it's ECF 28, in the lead case on appeal. That's a verified complaint that Ms. Coley filed in North Carolina that discusses in pretty high-level detail some of the marital difficulties that they've been having. What difference does it make if we hold whether Ms. Coley is equitably stopped or Mr. Coley is equitably stopped from asserting that she has ownership in the corporation? Well, Your Honor, it goes back to the fundamental question. The result being in both instances only Mr. Coley owns that entity. Well, Your Honor, I think what has to happen here is that the result as to Thundertime and Ms. Coley has to be vacated for lack of personal jurisdiction. To the extent that the district court is trying to issue orders as to either of them, equitably stopping Ms. Coley or ruling in its absence. The district court is trying to work its way through this really, really factually circular case in which she's come in. She may not have said it herself, but she took the benefit in the prior action of saying, I have absolutely no interest in this company. And now you come and say, oh, I have 50% interest in the company. And so he says you're equitably stopped from coming forth and saying that you now have 50% because you've already represented the court. I mean, it was clear she said, well, it was representative. She didn't have any interest. And so if the court, if you want to use different ways, maybe we can interpret to say, well, maybe she's not equitably stopped, but he's equitably stopped from saying that she has some interest in the company. But if she wants to now come and assert and say, I have interest in the company, therefore you can't come to my company, that's a whole different ballgame. Well, in fairness, Your Honor, she made that statement in December 2012, and there's evidence at JA 1752 of the record that Mr. Coley in January 2013 went about transferring a membership interest. But she herself stipulated to her dismissal from the case. I mean, she knew what was going on. Well, Your Honor, she did stipulate to her dismissal, and that dismissal was with prejudice. And so, again, in addition to not serving her with process and not having personal jurisdiction over her, that was a dismissal with prejudice. It killed all the claims that DIRECTV might have against her arising from these facts. So that was never set aside. So that's a third reason, res judicata, that you can't award relief against her in her absence when she's already been dismissed with prejudice. But the fundamental point is that while the district court is trying to work its way through the circular fact pattern, Judge Winn, it needs the parties before the court that it intends to award relief against. So how do you think IT, I'm sorry, it's Thunder Time or whatever it's called, should have been served other than serving Coley? I mean, it's just a shell company, right? Do they have, is there property? How else would you serve it? Under Virginia law, it looks like you can serve a foreign corporation by serving an agent of the corporation, and Coley was served, right? Coley was served as Randy Coley. It wasn't served as it's Thunder Time. And the problem here, Your Honor, is that the determination that Thunder Time is Mr. Coley's alter ego is a secondary determination that you make after you've got Thunder Time before the court and can exercise personal jurisdiction over it. You need to get Thunder Time into the proceeding and give it a chance to participate. So how should, I just literally don't understand, how should it's Thunder Time have been served other than by serving Mr. Coley? Is there some other agent who should have been served? I think Thunder Time could have been served through Mr. Coley, but that would have been service to Thunder Time of the motion that DIRECTV filed, you know, years after the proceeding started seeking relief against Thunder Time as opposed to Mr. Coley. But isn't that the whole point of Thunder Time being the alter ego of Mr. Coley? I mean, we don't have to stop the examination at the time of service. The court can look at the entire record, can it not? Respectfully to the contrary, Your Honor, I don't think it can. Why not? In an alter ego situation where the court's finding that the parties are defrauding the court, why can't the court look at the whole record? Why does the court have to stop at the moment of service on the parties? Zenith Radio versus Hazeltine, which both parties discussed in the motion to dismiss, the Supreme Court explains at pages 108 to 111 of that opinion, I think, that if you have a situation like this one where you have two entities, one of them is not before the court, has not been served, but is purportedly the alter ego of a party before the court, you still need to serve that absent party. And a determination made in its absence that it's the alter ego finds only the party before the court, not the absent party. And so the Supreme Court of the United States has been pretty clear on that very point, Your Honor. You need service on the absent alter ego before you start awarding relief against it in its absence. Can I ask a question? If we, if Mrs. Coley, just assume for a moment that Mrs. Coley didn't have non-party standing, are there any other independent arguments against the district court's equitable estoppel finding or is, do you know what I'm saying? I think I do. Assume that her due process rights are not at issue because she doesn't have standing. Just assume that. I'm not saying that. But if she didn't, is there, do you have, does that take care of the equitable estoppel issue for you or not? If the court determines that she doesn't have standing so her appeal must be dismissed, does that end the equitable estoppel? I don't think anybody else has standing to assert claims arising from the equitable estoppel to Ms. Coley. You also have a basis for equitable estoppel. You say, I recall correctly, you say, well, DirecTV had no business relying on what was said, those representations, because they were suing this lady for fraud and deceit. So how are they going to believe what she's actually saying in a lawsuit that results in her being dismissed with prejudice? That's an incredible argument. Don't you think? I don't, Your Honor, and I want to clarify that we're saying two things there. First, we're saying there's no, the court couldn't have found a material in the statement of fact because, as the district court itself said, J.A. 1884, it can't make heads or tails of ownership. If it can't figure out who owns this company, it can't hold as a finding of fact that she was wrong in that statement. Second, the question of what's reasonable has to turn on the circumstances of the case, and in particular circumstances. What can be reasonably relied upon. Exactly. What reliance is reasonable? You say it can't be an entity that is suing an individual for fraud and deceit. If that individual makes representations or representations are made or have by counsel to a court for that individual, you can't believe it because what you are suing this person for is for fraud and deceit. That's not exactly what we're saying, Your Honor. It's a little more subtle. That's part of what we're saying. But we're saying you have to look at all the circumstances. The first circumstance is that this comes in the context of a fraud suit. The second circumstance is that DirecTV has hired experienced trial counsel to conduct an independent investigation on this point. The third circumstance is that that trial counsel. What happens when the lawyers that are representing them get up and make this representation? And can you believe them? Even though they are representing someone with fraud and deceit, do we not believe them? Your Honor, for example, once DirecTV tells District Judge Urbanski that this declaration from Ms. Coley is false, it can't reasonably rely on that declaration, but that's what the district court found it did. That's what I'm trying to get at is that you have not just the basic concept that this is a fraud suit, but you have five subsidiary steps. You have to look at the circumstances, for example, the December 20th hearing in which she made that statement. What did DirecTV know at the time? And then you ask yourself, would an ordinarily prudent person rely on that single data point, that one statement she made under oath at that hearing, to the exclusion of the investigation that it conducted, the suit that it filed, the representations that it made to the district court about whether or not she's telling the truth? Would an ordinarily prudent person? What makes her representations believable now? Well, that's a question for the finder. She made a suit for fraud and deceit. There's no question we've got this whole business that Jenna Husband built DirecTV out of $38,000 a year for about a decade on the guise that they were only building like 168 customers when they were in fact doing thousands. And that absolutely goes to her credit. And because of that, why are we going to believe anything she says if that's the basis for saying that DirecTV cannot reasonably rely upon representations by counsel in a prior proceeding? Again, Your Honor, it's more than that. They said that, and then they said they did their investigation, and then they said that she was lying, and then they have documents that they've dug up in their investigation that contain contrary information, and then they rely on the single statement that helps them now in hindsight. Well, it's sort of an ironic situation, though, when you're standing in front of this court relying on the lack of credibility of your client to make the day on your point, isn't it? And you are running out of time, so you're running into what rebuttal time you may have. I agree that it's an extraordinary case, Your Honor. Okay, thank you. May it please the Court, I am Robert Shaw, representing Mr. Cawley in this appeal. Mr. Cawley appeals to this court to apply Delaware law as plainly expressed by the Delaware legislature in Delaware Code Section 18-703, or in the alternative, to apply well-established principles of federalism and restrict liability rather than expand it when state law is undecided, or three, to ask the Delaware Supreme Court to declare what the applicable law is so that this court may apply the correct law. Nothing in DIRECTV's brief presents any obstacle to this court choosing one of these three sensible options. Why didn't you move to certify in the district court? Your Honor, we have a plain language statute. But the obvious issues, the issues were obvious in the district court, so why strategically or for other reasons did you decide not to move to certify there? Your Honor, the plain language of the statute is clear. DIRECTV had no basis for its position that under Delaware law, a motion was unsupported by law and was plainly contrary to a statute. There is no need to certify questions every time that a question that's unsupported by another state's law is presented to a court. Well, what's different now? Your Honor, what's different now is that the district court fabricated a remedy not recognized by Delaware law. Excuse me, you're saying the district court fabricated something? I think you need to be more careful in your language, sir. I apologize. Let me rephrase. The district court created a remedy that had not been recognized in Delaware and did so contrary to the Delaware statute. Right. That's exactly why I'm asking, why didn't you ask the court to certify? Well, Your Honor, we believe that the Delaware law was clear and that certification was not necessary. Motion to reconsider. Judge, you know, you've plowed new ground here. Would you consider sending this to Delaware? Your Honor, motions to reconsider are generally disfavored. They're only for if the court misapprehends a fact or that there is a plain error. Well, and you're saying there is. You said the court was plowing new ground and that essentially ignored the Delaware charging statute in favor of reverse bail piercing. Why wasn't that a basis to ask the court to reconsider? Your Honor, we believe that the standard for a motion to reconsider is respectfully different. That issue was fully and fairly litigated and presented to the court. The court reviewed that and rejected those arguments. In that situation, we would have simply rehashed the exact same argument that we made in our brief. The district court rejected those arguments. We believe that the district court was incorrect in its apprehension of Delaware law. Let me ask you a question about this certification request that you're making. The Delaware Supreme Court, in opinion after opinion in the last few years, has admonished the Federal Circuit Courts not to send them cases where the facts are disputed. And you are essentially asking us to send them, at least in my perspective, perhaps an empty vessel stripped of the district court's findings of fact. If we do decide to certify, why can't we say in couching the certified question, in a situation where, as a matter of fact, an alter ego situation has been established, can the court engage in reverse veil piercing? In other words, do you object to a certification order stating specifically that the facts were found against you and determined to be credible by this court? In other words, not clearly erroneous. Your Honor, we believe that the certification is- No, no, answer the question. In other words, the Delaware Supreme Court has said don't send us things. I mean, case after case, with the Second Circuit particularly, have said don't send us cases where the facts are undisputed. So it seems to me that we may be engaging in perhaps a fruitless exercise if we just send them, on your recommendation, this empty vessel. Your Honor- Is my question to us sending to the Delaware Supreme Court the facts of this case as being not clearly erroneous and ask them whether under the facts of this case corporate veil piercing is available as a remedy. Your Honor, we do not object to that. We recognize that we are bound on appeal by the findings of the district court. Okay. Your Honor, I wish to highlight several essential and undisputed facts that are central to this matter. It's Thunder Time is a duly registered- Give me what you described to be the issue we should certify to the Delaware Supreme Court. My understanding is that was attempted before. Delaware Supreme Court, in this case, sent it back and said they wanted more information and ultimately went to the district court and the motion, or at least the certification request, was withdrawn. We sent it back to Delaware. And you're telling me Delaware has not spoken on this and it seems like there's another case out there that's really addressed the reverse appeal of piercing in another state dealing with Delaware? Yes, sir. You may be referring to the N. Ray Petters case from the Bankruptcy Court of the District of Minnesota. That case is very instructive and really underscores the importance of certification to the Delaware Supreme Court in this matter. Isn't there a California case too? Maybe a state court, but isn't there a California case that recently was on this point? Yes, Your Honor, and that is one of many cases that have addressed this question, some of which have come in favor of reverse veil piercing and some of which have been against reverse veil piercing. I refer, for example, the N. Ray Alt-Patel case, which also counsels against expanding liability under Delaware law to reverse veil piercing. These cases also inadequately or either inadequately or don't address the important questions of the Delaware charging order statute, which specifically says that it's the exclusive remedy, and that it applies both to single-member and multi-member LLCs, which is a question that has been litigated. Right, but how could it possibly apply when it's an alter ego situation? Your Honor, because the LLC was duly formed under Delaware law, it's entitled to the protection of Delaware law. Right, but we now have before us an alter ego situation, so how would that charging statute possibly be any kind of a remedy? The alter ego is an equitable remedy. The Delaware charging order statute bars this type of equitable remedy. This is not an unusual situation. The rights of creditors are limited in many areas of law. I point, for example, to homestead exemptions, to personal exemptions, to the family limited partnership concept. The limitation of a creditor's equitable or legal rights by the substantive state statutory law is a common feature in American law. Right, but doesn't a corporation under the Delaware charging statute have to be a real, a true LLC in order for the charging statute to be applicable? If it's not a true LLC, how would it apply? Your Honor, all that is required is that the LLC be a duly registered LLC. So it can be a fraudulent alter ego and the charging statute still applies. That's your position? Absolutely, Your Honor. Okay. What do you do with the district court's alternative holding in this case, that even if Delaware law doesn't allow this, this is appropriate as an exercise of inherent authority to sanction this quite extraordinary litigation misconduct? Yes, Your Honor. The court's inherent sanction power must be limited by statutory law. And I point to the U.S. Supreme Court's case of Bank of Nova Scotia versus the United States, which specifically held that the court's inherent sanction power is limited by constitutional as well as statutory law. That is at issue here in this case. Well, I mean, of course, the district court can't unconstitutionally sanction someone. But if we're assuming now that these factual findings are not clearly erroneous, that your client was intentionally using these LLCs as sham companies to hide assets, was engaged in egregious misconduct during litigation, district court can't sanction that by saying, you know what, you misused the corporate form. We're putting that money on the table? Your Honor, respectfully, no. The court's inherent sanction power is not unlimited. It must be otherwise proceed based on statutory and within the bounds of statutory law. Additionally, Direct TV is not precluded from pursuing any number of other remedies. Those remedies are provided or mentioned in the Tenth Circuit cases that we cited in our brief, for example, for employee versus internal revenue service. And the court could also engage in sanctions against Mr. Coley directly. But this particular sanction is not something that is within the court's. I thought he couldn't. I thought the district court could not sanction Mr. Coley directly because he hid all of his money in the LLC, which is why I thought the district court said this is the only appropriate sanction available to me, given the misuse of the corporate form to hide all of Mr. Coley's assets. Respectfully, Your Honor, I would argue that there are many different ways that the court could sanction. The court could impose attorney fee sanctions, could equitably stop as it did, it could issue a charging order, it could engage any number of sanction powers. But the sanction power is not a judicial talisman that's unlimited. And that ultimately must be limited by the statutory law at issue. Okay, sir, thank you. Your time has expired. Thank you, Your Honor. Mr. Jambach. Justices of the court and counsel, my name is John Jambach and I'm the attorney for DirecTV. I've been lead counsel in this case since it commenced back in June of 2011. DirecTV was initially named the defendant in this case. It was brought by a company called Sky Cable, and its principal, Robert Saylor, who was a DirecTV dealer. Let me ask you this question regarding to the reverse bail PRC. Counsel has represented, and I want you to know, isn't it correct what he says that maybe at least what he's alluding to is that most of the scholarly articles, court cases say, bail PRC is really not appropriate for LLCs. Maybe fraudulent transfer laws, something is a better way to do it. Is that the general view? I don't believe that is, Your Honor. We've addressed that at length in our brief. There is certainly a dispute between the various courts as to whether it's an appropriate remedy for an LLC. We cited the court to the CanCan case out of Delaware, which stands for the proposition that in the appropriate factual record under the appropriate circumstances, the Delaware court could well recognize the remedy of reverse bail PRC with regard specifically to an LLC. With regard to the certification request, Mr. Shaw has said now that Mr. Coley has no objection if we do certify with a statement that these facts are not clearly erroneous. The facts have established that he has engaged in fraudulent behavior, that the LLC is an alter ego. Do you have any objection to the certification on that basis? Well, Your Honor, our objection is that, as the court pointed out, this is a second bite at the apple. The appropriate time for Mr. Coley to raise that issue was before the district court reached a decision on that. I'm just wondering whether it might be in DIRECTV's interest to have this issue decided in terms of the fact that you're a nationwide corporation. I'm sure there are other people who are trying to scam you. I read in detail the CF Trust case, which was a Fourth Circuit decision, which did that basic remedy. The district court made factual findings of fraudulent conduct by an individual in a reverse bail piercing situation and submitted it to the Virginia Supreme Court for an interpretation on Virginia law on that precise issue. From our perspective, this case has been going on a long time and we want to get it resolved. We think the alternative bases cited by the district court are sufficient to be affirmed and move the case forward into collection. I understand the court's position in that if there is going to be any type of certification, that's our best case scenario. Even without certification, does the district court have inherent powers to reverse the piercings of bail? Your Honor, I would equate this essentially to striking a defense based on fraudulent conduct before the court.  He demonstrated to be an LLC that was created solely for the purpose of keeping his assets away from a creditor. The court looked at that and looked at basically the mockery the Coleys had made of the discovery process and the judicial system, which is detailed in his opinion at a level I've never seen before, and made the determination that on that basis, the court had the inherent power to essentially strike that claim. I have looked specifically, and I'm sure counsel has as well, for a case which does this exact action. I confess I have not found that case, but I believe the court properly justified its decision to do that under these specific factual circumstances in this case. That exercise of discretion should be subject to an abuse of discretion. What facts are we going to certify to the Delaware Supreme Court? You heard Judge Keenan's earlier question in the concession by counsel. I want to be clear if we certify this because, as Judge Keenan pointed out, Delaware doesn't want you to just send them things up there and sort of act like a jury with disputed facts and go back and forth. You need to give it to them clean. That's what certification is about, and ask us a question of law. So how do we get the question of law to them and then get it back so we know the position that Delaware takes on this? That is the dilemma presented by this order in which Thundertime and Mr. Coley have elected to proceed. As we set forth in our motion contesting Mr. Coley and Thundertime's request to have this certified, what the Delaware Supreme Court would have to do is either ignore the factual determinations made by the district court or else substitute in its own factual determinations because, as Justice Keenan said, there's been a finding of an alter ego status which precludes the application, in our view, of the Delaware charging statute referred to by the court. Okay. What about having the question read then when a court has found that an LLC is an alter ego, is reverse piercing available under Delaware law? What would be wrong with that? Again, I go back to my earlier answer to your question. I think that's the least bad of the situations that are presented to DIRECTV if the court determines that certification is necessary. I hope that answers your question, Justice Nguyen. It does, but it also begs the question of certification whether Delaware would recognize that one could be the alter ego of a company. Or is that a factual determination? According to the Kankan case, again, I refer to that. It appears that under the appropriate factual situation, the Delaware courts will recognize alter ego status in an LLC situation. There doesn't seem to be guidance beyond that in terms of what the Delaware court would do. I find it difficult to believe that the Delaware court would hold that under there are no set of circumstances in which fraudulent conduct in the could result in a determination of alter ego status and piercing that LLC there. I find that very difficult to believe. I guess at some point you have to look at this and say, does the mere act of submitting a piece of paper saying, I'm under time LLC to the Delaware Secretary of State and paying that necessary fee, does that subject you to the protections of the LLC statute and the charging order statute referred to by counsel in any circumstance, no matter what the LLC does after that filing that one piece of paper? I mean, we have the best factual record that I could imagine to answer that question in our favor and say, no, if you do not observe the corporate form, if you commingle completely and can present no evidence that a LLC was used for anything other than the act of protecting assets from lawful judgment credit and no other purpose, then I can't imagine the Delaware court would take the position that even under that circumstance, this filing of the piece of paper and paying the fee is sufficient to get that protection. Do you think there's enough of a census in the courts that we could affirm the district court on that ground, the district court properly predicted that Delaware would, in fact, recognize reverse bail piercing in this case? I absolutely do, and I think Judge Urbanski did an excellent job of conducting a survey of the law from the various jurisdictions, including Virginia. He looked at the Kankan case and the other cases from Delaware, which appeared to predict what Delaware would do in the appropriate case and looked at cases around the country. There is some disagreement on this, right? Absolutely. It's not as though we can just say, well, Delaware hasn't quite ruled on it, but there's an overwhelming consensus, so why wouldn't Delaware go with it? I agree with that, but I think the consensus is there aren't any courts that take the position that under no circumstances is this appropriate, and I think what Judge Urbanski did was seize on that and say, under these circumstances, looking at all these cases that say it's an extraordinary remedy and requires an extraordinary finding, I make these findings, and I find that this remedy is correct. And it would be limited to cases where the LLC has only one owner, right, because given the equitable estoppel holding, we wouldn't have to go any further than that. Yes, I mean, the way Mrs. Coley attempts to come into this case is to say that there is another member of the LLC, a quote, innocent member, and that was an effort after the fact to place this issue before the court and say, oh, wait a minute, we have to go back and make another determination because there's an innocent member there. I think in terms of that issue, Justice Wynn's position was correct. Judge, we call the judges on this court. Judge Wynn's position, excuse me, was correct, that the estoppel flows to the party before the court. What Judge Urbanski did is make a determination that Mr. Coley wasn't going to be able to use certain evidence, whether it came out of his mouth or his wife's mouth, concerning the ownership interest in Thundertime LLC based on prior testimony before the court. Why is this the means that you now have of being able to collect this $2.3 million plus that allegedly was taken by the Coleys? It appears to be there's probably enough that looks like to me could be the criminal type situation that happened. But why is this the vehicle that you use? And is it the timing or when you discovered it or did you lose some opportunity or somebody else is not doing something? I mean, you've got a potential criminal enterprise that could result in a criminal charge and maybe fines and restitution could arise. You've got fraudulent transfer if you're saying he's basically getting money illegally and moving it to somewhere else. But you bring this rather novel basis of reverse bail piercing that we talked about earlier. You acknowledge, I mean, it's out there. The academic will say that's not what you do with the LLC, notwithstanding how tight the facts are here. They don't control what the courts do now, by the way, but I just want to make sure it's out there. But why is it in this posse, it seems like to me? Is this the only vehicle or way in which you can pursue to collect your money? To provide a little history of the case for the court, Mr. Coley commenced this enterprise back in 1999, and it continued until 2011 when the case was filed. This LLC was set up initially with Mr. Coley as a single member in 2008, according to the records that were produced in discovery. So you give me those dates and you talk about statute of limitations problems? Or where are you going with that? Well, in terms of a fraudulent transfer, Mr. Coley was not being sued at the time he took. He used the proceeds from the Direct-to-Be scheme, which, to correct the point the court made, he was making $38,000 net per month, which results in a net of about $465,000 per year in this case. He took those funds and purchased real estate with it. And prior to being sued in 2008, began moving real estate into the Thundertime LLC. So is the problem that Direct TV didn't know this and maybe should have known it, and had you known it, you could have done something? Exactly, Your Honor. If we knew that Mr. Coley was engaged in this enterprise in 2008, we would have done something. I just find it incredible that a company would not know you're losing $400,000-and-some-odd-thousand from a couple who is billing you for $168,000 when their thousands get to $2,300. That was the genius of the scheme, Your Honor. But the genius of their scheme is highlighting, I don't want to use the word ignorance, but something on the part of Direct TV. What kind of business is this? That you don't know this until a decade later and you've lost means. I mean, how many other Coleys are there out there? There's a few, Your Honor. But is this the way in which you pursue it, is my question. Not typically, Your Honor. So typically, how would you? We would get an indication of the fraud of this type from usually the customer who says, you know, I'm not getting proper service, there's something wrong with the system, and then Direct TV follows up on that and discovers that a dealer or former dealer is doing something improper. In this case, Mr. Coley set up. And then your action would be? We would investigate and sue the dealer if necessary and take steps to undo a fraudulent transfer or anything else that he was doing with those proceeds immediately. And you couldn't do that here because? We couldn't do that here because Mr. Coley had set up an account which claimed to be what Direct TV calls a snap account for a single hotel. And on our records, it showed that he was paying for a 168-room hotel. Unknown to Direct TV, he had run a wire through the entire Massanutten Resort, and those customers didn't consider themselves Direct TV customers. They considered themselves East Coast Cable customers and paid all their funds to Mr. Coley. Mr. Coley paid Direct TV like clockwork for those 168 units, and there was no indication because he paid every time, and we did not get calls for any service issues or anything. They went directly to Mr. Coley. So he took this one unit and expanded it over the whole Massanutten Resort by a wiring system. And we did not discover that until Mr. Saylor and Sky Cable, a Direct TV dealer in the area, sued us saying, hey, I'm not getting commissions on this Massanutten account. It seems like there's Direct TV everywhere there. And that's how we obtained notice in this particular case. It's an unusual factual scenario because usually we will get, if there's any issues with an account, calls from the customers to the Direct TV line. But these all went internally to Mr. Coley and his company. What about your motion for limited remand? It seems to me that you're putting us in a difficult situation. You're asking to really split the case up. Well, what we wanted, Your Honor, this presents an interesting situation. When the court issued its order appointing a receiver in this case, Mr. Coley had already appealed. So the court stayed the appointment of that receivership. After the case was filed, Mr. Coley did not seek a supersedious bond or any type of stay of the case. And when we attempted to start executing on our judgment, he said, no, wait a minute, there's a stay on the whole case. And if you attempt to take any steps in aid of execution, you're in contempt of that order. We issued a subpoena to Mrs. Coley for discovery in aid of execution, and they moved to quash that subpoena, saying there's a stay in place. We sought guidance from the district court on the terms of that order as to whether that stay applied to the entire judgment because as of right now, there's no supersedious bond. This is a free appeal at this point. And the judge said, Judge Urbanski said, I no longer have jurisdiction to address that issue because it's in the Fourth Circuit. What you can do, counsel, is seek limited remand on that issue. So we filed that motion with the court, and there it is. I can't think of – I don't want the court to stick case, but on the other hand, I don't want this free ride to continue, particularly if there's going to be an issue sent to the Delaware Supreme Court for certification. This could go on and on for an untold period of time. So that's the basis for that motion, Your Honor. Unless the court has any further questions, I don't have anything further. Has Direct TV collected anything on the judgment? Not a dime, Your Honor. Rebuttal, Mr. O'Keefe. Thank you, Your Honor. Just very briefly in response to the court's questions about the district court's inherent sanction authority, even that authority is subject to due process. And I think that RMS Titanic and Zenith Radio would pretty well establish that, at least as to Thundertime and Ms. Coley, the proceedings below did not comport with due process and the results need to be vacated. Mr. Jambach correctly points out that, from his perspective, he has about the best factual record you could imagine. And part of the reason for that is that Thundertime and Ms. Coley were not there to contest some of these points. Unless the court has any questions, that's my argument. All right, sir. Thank you. Thank you very much. We'll come down to Greek Council and then call our next case.
judges: Barbara Milano Keenan, James A. Wynn Jr., Pamela A. Harris